## In re Anonymous No. 54 D.B. 88

Disciplinary Board Docket no. 54 D.B. 88.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

HILL, *Member,* November 6, 1989 — Pursuant to rule 208(d) of the Pennsylvania rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to this honorable court with respect to the within petition for discipline.

### HISTORY OF PROCEEDINGS

Respondent, [ ], Esq., was born in 1927, was admitted to practice law in the Commonwealth of Pennsylvania in 1957. His office is located at [ ].

On June 3, 1988, Office of Disciplinary Counsel filed a two-charge petition for discipline against respondent. In charge one, respondent was accused of neglecting a legal matter, misrepresenting to his client the contents of the interrogatories, failing to promptly withdraw as the attorney upon discharge by his client, and failing upon request to promptly deliver the client's file. In charge two, it was alleged that respondent neglected a legal matter and mis-represented the progress of the legal matter to his

client. On July 20, 1988, respondent filed an answer to the petition for discipline.

On July 28, 1988, the matter was referred to Hearing Committee [   ] comprised of [   ]. An evidentiary hearing was held on November 16, 1988. Although a stipulation was agreed to by the parties, there was no stipulation that would support a finding of a violation of the Disciplinary Rules. At the hearing, Office of Disciplinary Counsel presented 10 exhibits and the testimony of three witnesses. Respondent appeared pro se, testified and presented one exhibit. At the conclusion of the November hearing, the hearing committee found that there was a prima facie violation of at least one of the Disciplinary Rules. It was then determined that an additional hearing would be held for the purpose of receiving evidence with regard to the type of discipline to be imposed.

That hearing was convened on December 5, 1988, at which time Office of Disciplinary Counsel presented two additional exhibits. Respondent testified but offered no exhibits. At the close of the hearing it was agreed that briefs would be submitted to the hearing committee concerning the alleged rule violations and the type of discipline to be imposed. Petitioner filed a brief on February 10, 1989. Respondent did not file a brief.

The hearing committee filed its report on June 5, 1989 and recommended public censure. Neither petitioner nor respondent filed exceptions to the hearing committee report. Thereafter, the matter was referred to board member Frederick Wells Hill, Esq., for review and recommendation. On July 27, 1989, the matter was adjudicated by the board at its regularly scheduled meeting.

# FINDINGS OF FACT
*Charge One — The [A] Case*

On September 19, 1982, [A] sustained personal injuries in an automobile accident with a vehicle driven by [B], while she was a passenger in a vehicle driven by [C]. In January 1983, respondent agreed to represent [A] on a contingent fee basis. The fee arrangement was not reduced to writing and no retainer was requested or paid.

In September 1983, respondent orally advised [D] insurance claims representative [E], insurer of [C], that respondent would send [E] a letter of representation, and demand for settlement on behalf of [A]. Thereafter, because respondent failed to send this letter, [E] wrote a letter dated October 7, 1987, indicating he would make direct contact with [A] and begin negotiations with her if he did not hear from respondent. By letter dated October 11, 1983 to [E], respondent advised that he was not in a position to make a demand on behalf of [A] because he did not possess sufficient medical information on his client, as she was still being treated by her chiropractor.

On October 13, 1983, respondent met with [A] in his office to further discuss her accident. Between this October 1983 meeting and June 1984, respondent had very little contact with [A] concerning the status of her case. On several occasions, calls to respondent's office by [A] were unreturned.

After not hearing from respondent, [A] sent a registered letter, dated June 12, 1984, which letter was received by him. In that letter, [A] stated that although she wanted respondent to continue his representation of her, she wanted and expected to be kept advised of his progress in the case. She also indicated that if respondent were unwilling or unable to keep her advised, she would "seek other al-

ternatives." By letter dated June 28, 1984, respondent advised [A] that he would take immediate steps to settle the case, and that he would schedule a meeting with the adjuster within the next two weeks.

On August 15 and September 27, 1984, respondent spoke with [A] and discussed her treatment with the chiropractor. On September 14, 1984, almost two years after the accident and 19 months after he undertook [A's] representation, respondent filed a praecipe for writ of summons against [C] and [B]. This was only a matter of days before expiration of the applicable two-year statute of limitations. However, respondent failed to properly fill out the instructions to the sheriff for the writ to be promptly served. Respondent did not have the writ served until May 1985.

Regarding the passage of time from his undertaking representation of [A] and filing the writ, respondent knew that the applicable statute of limitations was two years, and he admitted that there was "no reason" for not filing the writ earlier. Perhaps more importantly, [A] was not aware that prior to September 14, 1984, respondent had not commenced the legal action. In fact, she learned of the date of filing when she called the courthouse to inquire about the case.

By letter dated December 27, 1984, respondent was informed by [A] of her decision to retain Attorney [F] as alternate counsel, and [A] demanded the return of her file. Attorney [F] wrote respondent a letter dated January 28, 1985, requesting that he forward the [A] file as soon as possible.

Respondent wrote to [A] on January 29, 1985, and offered numerous reasons why she should continue with his representation. He indicated that he had accumulated a "substantial file containing a great

deal of correspondence and medical opinions" relative to her condition, that he had commenced a lawsuit on September 14, 1984 on her behalf "in order to prevent the running of the statute of limitations" and that because of his actions, respondent was "quite certain that within the next four or five weeks reasonable settlement offers could be presented to [A] for [her] consideration." [A] allowed respondent to continue as counsel on her behalf.

On March 6, 1985, the defense caused a rule to file complaint to be issued and on April 2, 1985, respondent filed a complaint on behalf of his client.

On May 8, 1985, counsel for [C], [G], Esq., had respondent served with interrogatories numbered 1 through 33. In order to conceal his neglect of the matter, respondent under cover letter dated June 6, 1985, forwarded [A] only interrogatories 1 through 24 and failed to advise her of the content of the other nine questions, which concerned the timeliness of the action taken by respondent to serve notice of the litigation on defendants. The answers to the interrogatories were due on July 8, 1985. After not receiving the answers to the interrogatories in a timely manner, Attorney [G] wrote to respondent on July 24 and August 22, 1985 concerning the non-receipt of the answers. Under cover letter dated September 12, 1985, respondent forwarded to Attorney [G] the answers to questions 1 through 33 and included a purported verification of all of those answers executed by [A]. Respondent supplied the answers to interrogatories 25 through 33. At the time [A] executed the affidavit, she had no knowledge that her verification went beyond her answers to questions 1 through 24. Also, the circumstances under which [A] signed the affidavit were falsely represented to opposing counsel. On

October 15, 1985, Attorney [G] filed the interrogatories and the answers in [     ] County.

On July 14, 1986, respondent telephoned [A] for the purpose of updating her on her case and to arrange an office appointment. From July 14 to October 15, 1985, from time to time, respondent contacted [A] by telephone concerning her physical condition and her continued treatment with her chiropractor.

By letter dated September 11, 1986, respondent was advised by Attorney [H] that [A] had directed him to make the appropriate arrangements to assume her representation. Respondent failed to promptly respond to Attorney [H's] letter. By letter dated October 8, 1986, [A] confirmed her retainment of new counsel, commented on respondent's failure to respond to Attorney [H's] letter and demanded that her file be forwarded to her new counsel.

In September or October 1986, Attorney [H] met with respondent at his office, at which time it was agreed between them that respondent would make one final effort to settle the case. At this time, respondent began settlement negotiations and made a demand for $10,000. Counsel for [D] counteroffered $4,500 which respondent did not feel was an adequate settlement. Thereafter, respondent made an appointment to deliver the file to Attorney [H] in February 1987, but Attorney [H] was not available. Respondent rescheduled an appointment with Attorney [H] and delivered the file in April 1987. Through the efforts of both [H] and respondent, a settlement was reached with [D] Insurance Company, pursuant to which it contributed $5,500. Respondent contributed another $5,500 to the settlement, received no fees and was not reimbursed any costs in the matter.

## *Charge Two — The [I] Case*

On June 11, 1984, [I], an 81-year-old woman, contacted respondent in regard to a property encroachment problem she was having with her neighbor [J], Esq. Sometime after June 12, 1984, respondent visually observed the property and told [I] he would "look into the problem." No written or oral fee agreement was made and respondent never submitted to [I] a bill for fees or expenses. From June 1984 to March 1985, respondent took little or no action in pursuing [I's] encroachment problem. On December 16, 1984, at a chance meeting, respondent orally informed [I] that [J] would not take responsibility for the problem. In March 1985, respondent met with [I's] son-in-law, [K], who was acting on [I's] behalf. [K] told respondent to sue [J].

In May 1985, respondent advised [I] to obtain bids from several contractors for the cost of correcting the encroachment problem. Respondent also requested that [I] have a survey done on her property, but since she did not contact a surveyor, respondent arranged on August 2, 1985 to have a survey of the common boundary line between the properties. On August 1, 1985, [I] sent respondent the contractor bids and by August 21, 1985, respondent had in his possession the survey results and a bill for $225.

From September through November 1985, [I] made numerous calls to respondent's office; all of which were unreturned. In January 1986, respondent informed [I] that he had given [J] 30 days to obtain his own bid from a contractor. In May 1986, [K] contacted respondent by telephone and reiterated in unequivocal terms [I's] request to bring a lawsuit. Respondent indicated that he had not completed the necessary paperwork and that he wanted to speak with [J] before doing so.

After · three appointments with respondent wherein he did not have the complaint drafted, on June 17, 1986, [I] signed the complaint respondent had prepared. Respondent advised [I] that [J] would be served by courier on June 23, 1986. Respondent did not cause the complaint to be filed or served as he had indicated he would do, nor did he advise [I] that he had not intended on filing the complaint at that time.

Thereafter, respondent made misrepresentations to [I] and [K] concerning the status of the case. During a July 9, 1986, telephone conversation, [K] was told by respondent that he had extended the 20-day deadline for [J] to file an answer, because respondent had allowed [J] to pick up the complaint himself. On July 23, 1986, respondent again spoke with [K] and advised him that [J] would not voluntarily do anything about the property problem, and that [J] had 20 days to respond to the complaint. On July 17, 1986, respondent telephoned [I] and advised her that a meeting had been scheduled with [J] for July 21, 1986. In fact, as of July 23, 1986, respondent had not yet filed the complaint.

On or about August 25, 1986, [K] provided respondent with a copy of the complaint that had been filed with the Office of Disciplinary Counsel. During a September 2, 1986, office meeting with [I] and [K], respondent expressed displeasure that they had filed the complaint, but he was not requested to nor did he withdraw as counsel. At no time during this meeting did respondent advise [I] that he had not filed the complaint in her case.

During an early October 1986 telephone conversation, respondent told [I] that he and [J] were to meet with an unnamed judge about the case on October 10, 1986. Respondent further indicated to [I] that it was not necessary that she attend the

meeting. Respondent later informed [K] that the meeting had been rescheduled because the judge had criminal cases to hear. In fact, no meeting had ever been scheduled.

On October 28, 1986, [K] informed respondent that he and [I] had learned from the prothonotary's office that respondent had not yet filed a complaint. Respondent replied that the complaint had been filed and that "the girls in the prothonotary's office must have gotten it all mixed up." Respondent filed the complaint on October 29, 1986.

Respondent did not take appropriate steps to cause the complaint to be promptly served of record on the defendant. Of necessity, on August 27, 1987, respondent reinstated the complaint and had service of record completed on September 9, 1987.

## CONCLUSIONS OF LAW

Respondent has violated the following Disciplinary Rules:

### Charge One — The [A] Case

(1) D.R. 1-102 (A)(4) — A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(2) D.R. 2-110 (B)(4) — A lawyer shall withdraw from employment upon discharge by his client;

(3) D.R. 6-101 (A)(3) — A lawyer shall not neglect a legal matter entrusted to him;

(4) D.R. 9-102 (B)(4) — A lawyer shall promptly pay or deliver to a client as requested by a client the funds, securities, or other properties in possession of the lawyer which the client is entitled to receive.

*Charge Two — The [I] Case*

(1) D.R. 1-102 (A)(4) — A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(2) D.R. 6-101 (A)(3) — A lawyer shall not neglect a legal matter entrusted to him.

## DISCUSSION

Respondent was retained as counsel in two separate and unrelated cases. In both cases, respondent neglected the clients' legal matter. In both matters, respondent's neglect was not simply ordinary and inadvertent neglect or the result of an error of judgment made in good faith. "Neglect" involves "indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed the client." See *In re Anonymous No. 24 D.B. 80*, 20 D.&C. 3d 214, 223 (1981). Respondent consistently failed to take the appropriate action on behalf of his clients. Moreover, respondent failed to keep his clients advised of the status of the matters he was handling on their behalf.

In the [A] case, between October 1983 and June 1984, respondent failed to keep his client advised of the status of her case and repeatedly failed to return her phone calls. In addition, respondent waited almost two years after the cause of action accrued and 19 months after undertaking his client's representation before filing a praecipe for writ of summons. However, respondent failed to have the writ of summons properly served, thus creating a potential statute of limitations problem in the case. Respondent's neglect greatly affected the negotiations with opposing counsel as stated by respondent:

"I think what motivated the settling of this case

was not me, but it was that [G] (opposing counsel) was then going to take my deposition and [H] [A's] newly retained counsel) felt that . . . if they took my deposition, and I told them that I had not given instructions to the sheriff and so forth, they would probably withdraw all offers. Accordingly, [H] felt that if I would contribute enough to reach what he had apprised her as being a good settlement, it would be accepted."

After becoming concerned over the manner in which he was handling her case, [A] wrote respondent informing him that she was retaining new counsel. However, respondent convinced the client to allow him to continue in his representation, by stating that he could present her with reasonable settlement offers in the near future. Even after that, respondent failed to vigorously prosecute her case. He failed to promptly forward to [A] interrogatories that had been propounded by the defense. When [A] retained Attorney [H] to handle her case, respondent failed to promptly forward her file, even after [A] requested he do so in writing. The client should not bear the burden of commencing a lawsuit by pushing and prodding the attorney. Rather, the lawyer must zealously carry out the obligation he has assumed at the time he or she agreed to represent the client. See Code of Professional Responsibility Canon 7 (1980).

In the [I] case, respondent undertook representation in June 1984. But except for a chance meeting in December 1984, respondent had little contact and took no appreciable action to prosecute the matter until March 1985. Calls from [I] to the respondent went unreturned. [I's] son-in-law, [K], acting on her behalf, specifically directed respondent to file a complaint in March 1985. However, respondent did not follow that direction until Octo-

ber 29, 1986. He neglected the case further by not causing the complaint to be properly served. His neglect resulted in the necessity of having the complaint reinstated in August 1987 and service was finally accomplished in September 1987.

Respondent's most egregious misconduct occurred when he attempted to conceal his neglect from his clients and made numerous misrepresentations to them. In the [A] case, respondent, in order to cover up his neglect, failed to forward his client nine interrogatories which concerned the timeliness of the action taken by respondent to serve notice of the litigation on defendants. Respondent also had [A] affix her signature to an affidavit verifying the entirety of all answers without advising his client of the true content of the other nine questions for which he had supplied the answers.

In the [I] case, respondent misrepresented the status of the case to his client on several occasions. On June 17, 1986, when [I] signed the complaint respondent had prepared, respondent falsely stated that the defendant would be served by courier on June 23, 1986. Although respondent did not file the complaint, he informed his client that the defendant had 20 days to file an answer. On October 28, 1986, respondent stated that the complaint was filed, when he knew it was not. Also, respondent falsely stated that a meeting had been scheduled with a judge and later falsely represented that the meeting had been canceled. It is clear that integrity goes to the heart of the legal profession. See Canon 1, Ethical Considerations EC 1-1 (1980). A lawyer's failure in that regard has a detrimental impact upon the public's perception of and trust in lawyers. The board is mindful of this consequence when determining appropriate discipline.

The board has considered the mitigating circum-

stances in this case. Although respondent's conduct was reprehensible, he collected no fees in either case. Respondent enjoys a good reputation and is active in civic matters and community service. Fortunately, in both cases the client did not suffer a financial loss. In [A], respondent contributed $5,500 towards the settlement of $11,000. "Client loss is an important factor . . . because until such loss occurs the client has sufficient remedy in removing the case or matter from the lawyer involved and taking it to another lawyer." *In re Anonymous No. 24 D.B 80, supra,* at 222. However, the board believes that an attorney's conduct should not be judged on the sole basis of whether the client has suffered a tangible loss.

The board also is aware of respondent's past misconduct which has been considered in determining the appropriate discipline. In March 1985, respondent received an informal admonition for commingling client funds, in violation of Disciplinary Rule 9-102(a). However, it was determined that respondent had no intentions to purposely convert the funds, rather respondent's misconduct was due to his carelessness.

In the light of the foregoing, the board has determined that respondent's misconduct warrants public discipline. The board believes that the humiliation of public discipline will prevent the recurrence of future violations by respondent.

## RECOMMENDATION

The Disciplinary Board recommends that respondent be subjected to public censure by the Supreme Court of Pennsylvania. We further recommend that all costs in connection with these proceedings be paid by respondent.

Dr. Gilbert dissents and would recommend a private reprimand.

Ms. Heh and Messrs. Tumolo and Stoelker did not participate in the adjudication.

### ORDER

And now, December 8, 1989, upon consideration of the report and recommendations of the Disciplinary Board dated November 6, 1989, it ordered that [respondent] be subjected to public censure by the Supreme Court at the session of court commencing March 5, 1990, in Pittsburgh. It is further ordered that respondent shall pay costs, if any, to the Disciplinary Board pursuant to rule 208(g), Pa.R.D.E.